John Heenan
Bishop & Heenan Law Firm
1631 Zimmerman Trail
Billings, MT 59102
406-839-9091
john@bishopandheenan.com

Timothy M. Bechtold
Bechtold Law Firm, P.L.L.C.
PO Box 7051
Missoula, MT 59807
406-721-1435
tim@bechtoldlaw.net

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| WILL BALLEW, on behalf of himself and all others similarly situated, ) | CV - 15-133 - m - DLC |
| ) | |
| Plaintiff, ) | **COMPLAINT AND JURY DEMAND** |
| ) | |
| vs. ) | |
| ) | |
| VW Credit, Inc. ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

Plaintiff Will Ballew alleges as follows:

COMPLAINT                                                    PAGE 1 OF 14

1. Since at least 2009, Volkswagen Group of America (VW) intentionally violated the laws of the United States and the regulations of the United States Environmental Protection Agency (EPA) by selling automobiles in the United States that had a sophisticated software algorithm in the engine control module. The purpose of the software algorithm, defined in the Clean Air Act as a "defeat device," was to detect when a car's engine was being tested for compliance with emissions standards, and switch the car to an operating mode that would enable the car to appear to pass vehicle emissions standards. At all times other than in emissions testing mode, the engine control module would suppress emission controls and switch the car's operating mode to emit up to forty times the quantity of nitrogen oxides allowed by federal emissions standards.

2. Nitrogen oxides are highly reactive gases that contribute to ground-level ozone, fine particulate, and nitrogen dioxide pollution. Exposure to these pollutants is a recognized cause of respiratory illnesses.

3. The EPA has established regulations with strict emissions standards, and every vehicle sold in the United States must meet these emissions standards to help control air pollution.

4.    On September 18, 2015, the EPA sent VW a Notice of Violation informing
VW that the EPA had discovered the defeat device in 2.0 liter diesel engines
in at least the following diesel models of VW's vehicles (the "Violating
Vehicles"): 2009-2015 VW Jetta; 2009-2015 VW Beetle; 2009-2015 VW
Golf; 2014-2015 VW Passat; and 2009-2015 Audi A3.

5.    Discovery may reveal that additional vehicle models and model years are
properly included as Violating Vehicles.

6.    Since VW introduced its 2.0L TDI Clean Diesel engine in 2008, VW has touted
it as a "fantastic power train" that "gives very good fuel economy" that "is
also good for the environment because it puts 25% less greenhouse gas
emissions than what a gasoline engine would, . . . cuts out the particulate
emissions by 90% and the emissions of nitrous oxide are cut by 95%, . . .
[and is] clean enough to be certified in all 50 states." (Statement of
Volkswagen Group of America, Inc.'s Chief Operating Officer Mark Barnes,
to *The Business Insider*, October 9, 2009.)

7.    Mark Barnes did not add that the VW clean diesel vehicles were engineered
to be able to detect when they were being tested and to switch the manner
in which the emissions system operated to be able to achieve those

reductions in nitrogen oxides.  Mark Barnes also did not disclose  that, after circumventing the emissions laws of the United States, every one of VW's clean diesel vehicles' emissions systems were programmed to run in a model that would result in up to 40 times the allowable quantities of nitrogen oxides being released into the atmosphere under normal operating conditions.

8.  VW relied on this fraud to position itself as the market leader in automotive diesel sales in the United States. According to VW's documents, VW had captured 78% of the automotive diesel sales in the United States by 2013.

9.  The EPA has directed VW to recall all the Violating Vehicles and repair them to comply with emissions standards. Even if a repair is possible, which is not certain at this time, the repair will cause substantial changes in performance and efficiency in the Violating Vehicles, thus Plaintiff's and class members' vehicles will no longer perform as they did when purchased and as advertised.

10.  In its September 18, 2015 letter to Volkswagen, the EPA said that it was illegal for VW to offer to sell or place in the stream of commerce the Violating Vehicles.

11.  Approximately 500,000 Volkswagen vehicle purchase or lease contracts are tainted by the fraud of VW. Many if not most of purchases of the Violating Vehicles are financed by consumers. Many if not most of the consumers financed through Defendant VW Credit, Inc.

12.  VW Credit, Inc. describes itself as "the captive finance company which services Volkswagen, Audi and Ducati customers, authorized automotive dealers and their affiliated stores as Volkswagen Credit and Audi Financial Services." *See* http://www.vw.com/financial-services>.

13.  Defendant VW Credit is a wholly-owned subsidiary of Volkswagen Group of America, Inc., which is a wholly owned subsidiary of Volkswagen AG.

14.  Since the revelation of VW's admitted emission fraud, over 175 private class action suits have been filed in at least 40 judicial districts before 60 district judges seeking damages or rescission of the purchase contracts, or both. In addition, State Attorneys General actions have been filed.[1]

15.  None of the actions heretofore filed are known to have addressed one of the most important questions of consumers: "Do I have to continue making

---

[1] Brief, Dkt. #25, IN RE: VOLKSWAGEN "CLEAN DIESEL" MARKETING, SALES PRACTICES, and PRODUCTS LIABILITY LITIGATION, MDL No. 2672 before the Judicial Panel on Multi-District Litigation.

payments to VW?"

16.    The answer to the question is "No."

17.    In 1975, the Federal Trade Commission (FTC) enacted a Rule titled as the

Trade Regulation Rule Concerning the Preservation of Consumers' Claims and

Defenses. 16 C.F.R. §433.2.  It is now more commonly referred to as the "FTC

Holder Rule" or the "Holder Rule."  As explained by the FTC, the Holder Rule

"is designed to prevent the widespread use of credit terms which compel

consumers to pay a creditor even if the seller's conduct would not entitle the

seller to be paid. It is designed to preserve the consumer's legally sufficient

claims and defenses so that they may be asserted to defeat or diminish the

right of a creditor to be paid, where a seller who arranges financing for a

buyer fails to keep his side of the bargain."[2] That is, consumers can assert

against VW Credit, Inc. and VW Credit Leasing, Ltd. the fraud of Volkswagen

Group of America, Inc. and withhold payments pending resolution of their

_____

[2] Staff Guidelines on Trade Regulation Rule Concerning Preservation of
Consumers' Claims and Defenses, published May 4, 1976, p.6. available at:
https://www.ftc.gov/system/files/documents/rules/holder-
rule/760504hidcrule.pdf

1  claims, including their claims for rescission due to fraud or illegality. As

2  required by the FTC Rule, the VW Credit contract states in bold:

3
4  NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSENS WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEED HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

5  The preceding NOTICE applies only to goods or services obtained primarily for personal, family, or household use  In all other cases, Buyer will not

6  assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract

7
8  18.  Plaintiffs seek a preliminary injunction to prevent VW Credit from:

9     (1) accepting payments from consumers on contracts that relate to the

10
11       Violating Vehicles, and

12     (2) reporting derogatory or negative information on credit reports of

13
14       consumers who currently own the Violating Vehicles and who are, by

15       federal law, excused from payment due to the fraud and illegality of the

16
17       contracts that they entered for the purchase or lease of the Violating

18       Vehicles.

19
20                    **JURISDICTION AND VENUE**

21  19.  Jurisdiction is proper in this Court because Plaintiff seeks to invoke the FTC

22
23  Holder Rule against VW Credit, which implicates federal question jurisdiction.

24  Plaintiff seeks rescission and restitution and injunctive relief for a nationwide

25
26  class of persons that implicates the Class Action Fairness Act, 28 U.S.C. §§

27
28

1332(d), 1453, and 1711–1715 because the injunctive relief will certainly

exceed 5 million dollars. Venue is proper in the United States District Court

for the District of Montana pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1441(a)

because Defendant's contacts with this District are sufficient to subject it to

personal jurisdiction, and venue is proper in this division because Plaintiff

resides in this division.

**PARTIES**

20.   Plaintiff Will Ballew, a resident of Missoula County, Montana, and citizen of

the State of Montana, purchased a 2015 Volkswagen Jetta Sportwagon TDI

diesel from Karl Tyler in Missoula, Montana. Plaintiff Ballew financed the

purchase through VW Credit.

21.   Plaintiff purchased his vehicle, in part, because of the "CleanDiesel" system

as advertised by VW that touted the cleanliness of the engine system for

the environment and the efficiency and power and performance of the

engine system.

22.   Defendant VW Credit, Inc. is a Delaware corporation with its principal place

of business located at 1401 Franklin Blvd., Libertyville, IL 60048. At all times

relevant to this lawsuit, VW Credit Inc.  financed the purchase of Violating

Vehicles under the Volkswagen and Audi brand names to consumers in the United States.

## CLAIMS

### Rescission and Restitution

23. Plaintiff, for himself and all members of the class he seeks to represent, and on the basis of fraud or illegality, seeks rescission of the purchase financing contract or lease contract that was entered into in relation to the purchase or lease of a Violating Vehicle by class members who at the time of this Complaint still own one or more of the Violating Vehicles. Plaintiff also seeks, for himself and the class members, restitution of all amounts paid on the finance or lease contracts.

24. Plaintiff seeks rescission and restitution based upon the common law and deceptive trade practices statutes of all states and territories of the United States, including those statutes identified in the attached summary of state deceptive trade practices statutes.

### INJUNCTIVE RELIEF

25. Plaintiff seeks injunctive relief during the pendency of this suit. If Plaintiff and class members continue to make monthly payments, they open

themselves to arguments that they have waived or ratified the fraud and

illegality that induced them into the financing contracts. If Plaintiff and the

class members stop making payments, as is their right, VW Credit may

report derogatory information to credit reporting agencies. The requested

injunctive relief is so that Plaintiff and the class members may withhold

payment to VW Credit for the Violating Vehicles without fear that VW

Credit a will ruin their credit by reporting derogatory credit information

such as late payments, no payments, voluntary surrender, repossession and

the like. Because of the fraud and illegality in the financing contracts,

Plaintiff and the class should not be prejudiced in any way for exercising

their right to withhold payment.  VW Credit should be enjoined from

reporting to any credit reporting agency any derogatory information

related to the withholding of payments.

26.   At this point there can be no room for argument about the fact that VW

defrauded hundreds of thousands of Americans who purchased the

Violating Vehicles. VW has admitted it; the fraud is now common

knowledge. The fraudulent scheme is detailed in lawsuits, by the EPA in

press releases, and by the testimony of VW presented before Congress. The

1

2

3

4      27.   Though many class action cases have been filed, none seek an adequate

5            remedy for consumers; no other class actions have been filed against VW

6

7            Credit, Inc. in which rescission is sought related to the financing or leasing

8            by consumers of the Violating Vehicles. Plaintiff and the class members are

9

10           without an adequate remedy at law. If Plaintiff and the class members

11           continue to make payments, they run the risk of waiving their rescission

12

13           rights, or at least facing a defensive issue that is not now present.  Once the

14           legal argument is made that Plaintiff and the class waived or ratified the

15

16           fraud by continuing to make payments, the legal claim of Plaintiff and the

17           class is irreparably harmed. If Plaintiff and the class seek to withhold their

18

19           payments without the protection of an injunction against derogatory credit

20           reporting, innocent consumers duped by VW's fraud will be further

21

22           victimized by Volkswagen. When Plaintiff and the class members tender or

23           surrender their Violating Vehicles back to VW, as may be required in order

24

25           to preserve their rescission claims, they will be in need of substitute

26           vehicles and credit to purchase or lease substitute vehicles. If VW Credit

27

28

probability of success on the merits of this case for Plaintiff and the class

members is high.

and VW Credit Leasing are permitted to report derogatory credit

information about Plaintiff and the class members who withhold payments,

then Plaintiff and the class members will be unable to purchase substitute

vehicles or only to be able to purchase them at higher interest rates due to

the derogatory credit reporting by VW Credit.

28.   Further, a preliminary injunction will further the public interest as

expressed by the FTC Holder Rule. The rule is in place to prevent the

situation where the consumer has a valid claim against the seller, but

would, without the Rule, still have to pay for the fraud tainted vehicles

pending the dispute. To give effect to the FTC Holder Rule and balance the

hardship between the innocent purchasers and the self-described "captive

financing company" for VW, a preliminary injunction is appropriate.

29.   Plaintiff seeks certification of a class of consumers who purchased and still

own or owe money on one or more of the Violating Vehicles and financed

the purchase either through VW Credit, Inc.

30.   The class is so numerous that joinder of all members is impracticable; VW

has estimated the class size of Violating Vehicles to be nearly 500,000. The

class of Violating Vehicles financed by VW Credit to consumers is expected

to be several hundred thousand folks.

31.  There are questions of law or fact common to the class, including whether

the class members are entitled to rescission of their financing contracts due

to the fraud of VW, which directly or indirectly owns Defendant.

32.  The claims of the representative Plaintiff is typical of the claims of the class;

all seek rescission of their financing contracts due to the fraud and illegality

that has saturated those contracts.

33.  The representative Plaintiff and his attorneys will fairly and adequately

represent the class.

34.  Defendant has acted or refused to act on grounds that apply generally to

the class, so that final injunctive relief or corresponding declaratory relief is

appropriate respecting the class as a whole.


**WHEREFORE**, Plaintiff, for himself and all other similarly situated, demands

judgment against VW Credit, Inc. as follows:

1.  For rescission of the financing agreements related to the purchase of

the Violating Vehicles, and restitution of amounts paid under the

contracts.

2.    For a preliminary injunction to prevent any reporting of derogatory or negative information released to the financing or lease of Violating Vehicles through VW Credit, Inc.;

2.    For an award of attorney's fees and costs as provided by any applicable provision of law.

3.    For such other and further relief as the Court deems just and equitable.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

DATED this 14th day of October, 2015.

/s/Timothy M. Bechtold
BECHTOLD LAW FIRM, PLLC

John Heenan
BISHOP & HEENAN LAW FIRM

ATTORNEYS FOR PLAINTIFFS